Stanley J. Piwowarski and Mary I. Piwowarski v. Commissioner.
Piwowarski v. Commissioner
Docket No. 78673.
United States Tax Court
T.C. Memo 1961-288; 1961 Tax Ct. Memo LEXIS 61; 20 T.C.M. (CCH) 1510; T.C.M. (RIA) 61288; October 20, 1961
*61 Held, petitioners are not entitled to exclude any amount from their gross income as "sick pay." Stanley J. Piwowarski, pro se, 27 Dustin St., Saugus, Mass., for the petitioners. Lawrence A. Wright, Esq., for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined *62 a deficiency in income tax due from petitioners for the taxable year 1957 in the amount of $1,005.32. The only issue for decision is whether petitioners are entitled to exclude from their gross income for the year 1957 the amount of $4,800 as sick pay. Findings of Fact Petitioners were husband and wife, residing in Saugus, Massachusetts, during the year 1957. They filed a joint Federal income tax return for the taxable year 1957 with the district director of internal revenue, Boston, Massachusetts. During 1957, petitioner Stanley J. Piwowarski (hereinafter referred to as Stanley) was president, a director, and sole stockholder of Automatic Machine Company, Inc. (hereinafter referred to as Automatic), which was engaged in the development of automatic machinery and production and jobwork. Automatic had between 8 and 12 employees; but Stanley was its only salesman, he directed the work of the other employees, was in charge of all management details, and "practically ran the whole operation" of Automatic himself. Early in 1957, Stanley lost considerable weight, tired easily, and was unable to sleep or rest properly. He was advised by his physicians and family to try to rest *63 and to stay away from his business as much as possible. As a result of this advice, Stanley tried to stay away from his duties at Automatic but found he was unable to do so without suffering a financial loss. On several occasions during the year, he was absent from work at Automatic for several days at a time, but he usually went to work every day. However, his health often would not permit him to work more than a few hours each day. Stanley was also employed by United Engineers, Inc., during part of 1957. He performed his duties for United without absences from work. During 1957, Automatic had no wage continuation plan for its employees in the event of their absence due to injury or sickness. Payment of salary during periods of illness was within the discretion of the directors. Stanley was not hospitalized at any time in 1957. On their income tax return for 1957, petitioners reported the following salaries, wages, and "sick pay": Employer
City
Wages
Automatic Machine
Co., Inc.
Saugus, Mass.
$7,721.50
United Engineers, Inc.
Boston, Mass
1,934.06
United Super Markets,
Inc.
Revere, Mass.
225.65
Total
9,881.21
Less: Excludible "sick pay"
4,800.00
Balance
$5,081.21
*64 At least a part of the above wages received from Automatic was paid to Mary, Stanley's wife and petitioner herein, for services rendered the corporation. Stanley's salary from Automatic was "in the neighborhood of $100 per week." The amount of $4,800 excluded as "sick pay" on the return was Stanley's estimate of that portion of his salary received from Automatic for which he had been unable to properly perform his duties, i.e., that he had not earned. Petitioners attached the following statement to their return for 1957: Wages as indicated on W2
Form of Automatic Machine
Co. for myself and my wife.
$7,721.50
Contributions by employer con-
tribution plane none.
Amount claimed for period ab-
sent from work as indicated in
income on return line 6(a).
$4,800.00
I claim although I reported to
work practically every day
regularly, my health did not
permit me to actually only
two or three hours of work a
day, therefore I claim the de-
duction above which I claim
sick pay.
Petitioners have not shown that they are entitled to exclude the amount of $4,800 from income for the taxable year 1957. Opinion Petitioners received $7,721.50 from their employer, *65 Automatic, during 1957. How much of this sum was paid to Stanley we do not know; but in filing their return for 1957, petitioners claimed that the amount of $4,800 represented excludible "sick pay" paid to Stanley. This amount represented the estimated portion of Stanley's compensation from Automatic which was paid him despite the fact that because of illness, he could not work more than a few hours a day. The full amount of Stanley's compensation paid him by Automatic would constitute income to petitioners unless they can bring their situation within the purview of some specific provision of law exempting or excluding Stanley's compensation from gross income. ; ; . Income which is otherwise taxable is none the less income because it is unearned by the taxpayer. As we understand petitioners' contention, it is that because of illness Stanley was unable to actually earn $4,800 of his salary from Automatic and, therefore, it is excludible as *66 "sick pay." Petitioners cite no specific provision of the Internal Revenue Code nor other authority to sustain their contention. Respondent assumes, and we do too, that petitioners had in mind the "sick pay" provisions of section 105 of the 1954 Code. [1]
*67 Section 105(a) provides that, except as otherwise provided in that section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts are paid by the employer, and section 105(e) provides that amounts received under an accident and health plan for employees shall be treated as amounts received through accident or health insurance. There is no evidence that Automatic had any arrangement or plan for payment of sick benefits nor is there any evidence that Automatic ever paid benefits to any other employee during his absence due to illness. It appears at the outset that inasmuch as the payments claimed to be excludible here were not received either through accident and health insurance or under an accident or health plan for employees, section 105 of the Code is not applicable to such payments. [2], on appeal (C.A. 4, Apr. 28, 1961).
But even if section 105 were applicable, it would only serve to require inclusion of the payments in gross income *68 under subsection (a) unless excluded under subsections (b), (c), or (d). The payments were not for medical care or for something unrelated to absence from work, so subsections (b) and (c) do not apply. Subsection (d) excludes from gross income payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness, up to $100 a week, but this does not apply to payments attributable to the first 7 days of such period unless the employee is hospitalized. Here we have no evidence that any part of the payments Stanley received from Automatic was paid in lieu of wages for a period during which he was absent from work because of sickness. In fact, Stanley testified that he went to work for at least a part of practically all working days during the year. And certainly we cannot ascertain from the record how much of the payments might be attributable to the first 7 days of any particular absence, and thus not excludible. Petitioners have failed to prove that they are entitled to exclude any amount of the payments received from Automatic from their gross income. Decision will be entered for the respondent. Footnotes
1. SEC. 105. AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS. (a) Amounts Attributable to Employer Contributions. - Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer. * * *
(d) Wage Continuation Plans. - Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. In the case of a period during which the employee is absent from work on account of sickness, the preceding sentence shall not apply to amounts attributable to the first 7 calendar days in such period unless the employee is hospitalized on account of sickness for at least one day during such period. * * * (e) Accident and Health Plans. - For purposes of this section and section 104 - (1) amounts received under an accident or health plan for employees, and * * *
shall be treated as amounts received through accident or health insurance.↩
2. Nor would section 104 be applicable, for the same and other reasons.↩